We'll hear argument next in In Re Ocean Rig UDW 18-1374. Please proceed. Good morning. May it please the court. My name is Tali Mindy Wiener. I'm here today as and for the appellant. I'm a little bit nervous. It's my first time before a circuit court. I hope you bear with me. I've prepared some remarks and you can feel free to ask me questions at any time. So, I'd like to open with a previous ruling by this court, some language I think is really important here, which is the DBSD case, 634 F3rd 79, where this court said, we think it plain that we should not forbid all appeals by out-of-the-money creditors. Such a rule would bar a large percentage of creditors in bankruptcy court, perhaps a majority of them, from ever reaching the district court or this court, however erroneous the orders of the bankruptcy court might be. Such a result might benefit this docket, but would disserve the protection of the party's rights and the development of the law. We should not raise the standing bar so high, especially when it is a bar of our own creation and not one required by the language of the code, which does not contain any express restrictions on appellate standing. And that goes on to cite- But that was a creditor. That was a creditor. So I think that only adds further support to my case, because even if you have an out-of-the-money creditor, which would rank higher than an out-of-the-money shareholder, the court will hear it. There is no rule about being out-of-the-money in this court precluding appellate rights. I'm also not out of the money. I'm in the money, as are other shareholders under these schemes of arrangement. I think that there have been a series of analogies made between Chapter 15 proceedings and Chapter 11 proceedings, and a- Let me flip it. What do you stand to lose in connection with the restructuring? I have lost- No, no. What do you stand to lose going forward? Well, okay. What do you stand to lose? Go ahead. I have lost the right of an American shareholder to have access to our federal courts. It's the same right that was lost in Manville, and that was challenged in Manville. This court recognizes that there's a right of access to courts. I am enjoined. So what I have lost, I didn't lose by the Kamen court. It's not a situation of comedy, which this court has discussed recently at length in the In re Picard case. It's not adjudicative comedy. It's not prescriptive comedy. I'm not asking this court to do anything- You have standing because you've lost standing in court. You've lost access to court. I understand. I have standing, yes, because I am subject to an injunction, which is ongoing, which I protested, and I have lost the ability now to access the U.S. courts. That's not something that the Kamen court did. The Kamen court's injunctions were fairly modest and conservative. All you had before the Kamen court is a scheme of arrangement. There have been a lot of comparisons that the other side has made here to try to confuse, I think, both the district court and this court to make you think that a Chapter 11 is something like a scheme of arrangement, and that's just not the case. A scheme of arrangement is typically an agreement by creditors to do a balance sheet restructuring. It can be something else. There can be a shareholder scheme, but there wasn't one in this case. There's not a Kamen court here that enjoined me. It was a U.S. court here that enjoined me, and the question is whether the bankruptcy court got it right as a matter of law and as a matter of Chapter 15. I could only be enjoined if Ocean Rig basically has a center of main interest in the Kamen Islands, and it is just fairly obvious that this is a Greek company, that its center of main interest does not lie in the Kamen Islands. Under those circumstances, there's just no basis under the bankruptcy code for the court to be enjoining me, and that's why I appealed. I have a right that Congress gave under 28 USC section 158. I have a right that says that district courts shall have jurisdiction to hear appeals. That's the way that it works. Bankruptcy courts are specialist courts. They can enter final orders on core matters, but then I have a right of appeal. What the district court did here is cut off a case on a standard that is judgment, misapplied, as I think is shown in my briefing, and is worse than botching a 12B6 analysis. This practice of dismissing an appeal instead of adjudicating an appeal, I think is inconsistent with precedent, and it's inconsistent with the statutory scheme. Now, I expect that Ocean Rig will say, well, we've been acquired by Transocean, and therefore, all of this is moot, but it's not moot. The Ocean Rig still wants the injunctions in place. I want the injunctions not to be in place, and to take a position that enjoined- I don't think what one wants isn't what determines what's moot. What is it that renders it not moot, other than that you want to be heard? There are injunctions that are ongoing. I continue to be subject to those injunctions, and this court has reviewed many cases where injunctions entered by bankruptcy courts are at issue. You didn't answer Judge LaValle's question. The question is, if we remove the injunction and you were to go back into bankruptcy court, what asset is there to which you could lay claim? The assets are- They're distributed, aren't they? The assets are distributed, but I'm not an out of the money party that's looking to claim something. What would you ask the bankruptcy court to do if you went back to bankruptcy court? If this court reverses, I think the consequence is that this goes back to the district court for merits appeal. It will undo everything that happened in the Cayman Islands? No, I'm not asking that anything be undone that happened in the Cayman Islands. The Cayman court can exercise jurisdiction based on a company having a local registration, and that's fine. The bankruptcy court, I think, could not undo the Cayman result if it wanted to. So if we go back to a bankruptcy court, then the court can consider the recognition question. Under 11 USC section 1517D, recognition can be revoked. This court has reversed chapter 15 recognition. This is something that happens. And what I would want, ultimately, is to be able to sue for what happened here. I am enjoined. And that way, I am in the same position- Sue for what? To sue to obtain what? Under the US securities laws. I invested in a company, the trades- What relief would you be seeking in your suit? I'd be suing for fraud. And none of that, there's no collateral estoppel, there's nothing like that. Now, this court, I think, I'm sure you can appreciate I'm a pro se litigant. I am a bankruptcy attorney. I would certainly need to talk to a securities lawyer to figure out what the securities claims are. But I invested in stock that was trading in the United States. Suits are brought against sister companies of Ocean Rig in the United States. Foreign companies are answerable here. And that is what I want. It's quite similar to what happened in the Fairfield case decided by this court, which the district court tried to distinguish, which the appellees tried to distinguish. But that was the same thing. That was shareholders in a deeply insolvent fund. It made all feeder funds. Thank you very much. You've reserved two minutes for rebuttal. Thank you. We'll hear from Mr. Rubens. Good morning, and may it please the court. Daniel Rubens of Orrick, Harrington, and Sutcliffe for the appellees. The district court was correct to dismiss this appeal for two separate reasons. The appellant lacks standing and her appeal is equitably moot. On standing, the questioning focused on the injunction, and I think there's an absence of explanation of what the injunction does to cause harm to the appellant's pecuniary interest. We just heard at the very end about a securities fraud claim, but nothing was ever said about that below. That wasn't raised in the bankruptcy court or the district court as a basis for standing. So I don't think this court should reach that now. And this case, I think the Barnett case is instructive of the problem with this injunction theory of standing. There is an injunction in the recognition order that applies to all persons. But what the prudential standing doctrine requires is some articulation of how that affects an appellant's pecuniary interest. Was it inherently, though, a determination that her claim is worthless? She never asserted a securities claim. I didn't say a securities claim. Her claim is a shareholder. She has a shareholder claim against the debtor, doesn't she? Well, she alleges to have been a shareholder of the debtor, but- I presume that there are enough assets in the corporation that shareholders would have been paid. She'd have a claim. She would have an interest if there were a surplus. She'd be down the priority pool, but if the money could trickle down far enough, she'd have a claim, right? I'm not sure if claim is the right word, but she would stand to recover in that circumstance. That's- That's standing. Yeah. She'd have standing. Isn't the standing decision, in essence, a merits decision? With respect, she'd have standing to challenge the distribution. Sounds like a weird way to understand standing. Generally, standing is you have no skin in the game. But this is a determination that she has no skin in the game because there's no skin left. The standing analysis focuses on the order that's being challenged, and I think that's very important here. She's not complaining about the priority scheme or anything like that. What she's complaining about is this recognition order. And what that did was just act as an automatic stay, essentially, while the human restructuring was proceeding. So if this were a Chapter 11 plan and there was some problem with classification, and that's like the DBSD case, where you had a creditor who felt like it was getting skipped over, and the court there said, yeah, we're not going to have a blanket rule that out-of-the-money creditors. Creditors of the debtor in the United States have standing to object to the recognition order. If they could articulate a connection between their interests, they would. So if they felt that recognition was, for example, there was a significant creditor who was bringing fraudulent transfer claims. And if they said the recognition order is preventing us from pursuing those claims because of the stay, then that might be standing. And that's similar to the Fairfield case, which we've heard a lot about. Someone wanted to bring a claim. So you just need to make a connection between the order you're challenging and your interests. So I think it's- That would be consistent, by the way. That is, this creditor fraudulent conveyance claim would be consistent with the district court's decision. That would be consistent. Yeah, that theory wasn't being addressed by the district court. And just with reference to whether or not shareholders are in the money or out of the money, what happened, and this is explained in the papers, is they were diluted down to nearly zero. And that wasn't a recognition that there was somehow a surplus or enough value for creditors to recover, that was just to facilitate a continued stock listing. So that's a separate aspect of why standing here is lacking. Because the insolvency is a matter of factual findings at both the bankruptcy court and the creditors of value in terms of shareholders actually having any entitlement to recover. And the access to courts and injunction, I mean, that just, I think, becomes circular. You need to connect the injury to your pecuniary interests. However much one might object to the findings about where the debtors had their center of main interests. And I think it's appropriate, standing, the reason the doctrine exists is because it cuts, it's just a predicate to review on the merits. So when standing is lacking, then you don't reach the merits, and that's just a feature of the doctrine. Turning to equitable mootness, this court supplied that doctrine for decades, and there's every reason to apply it in chapter 15. If you look to the purposes of the doctrine, it's about avoiding unsettling a restructuring plan that's become final, and it's based on the importance of third party reliance, and those concerns are only heightened in the chapter 15 context, where the statute tells you that you need to coordinate with foreign countries. With respect to the comedy point, the way that comedy comes in here is, it's just recognizing that this is an ancillary proceeding in support of a foreign proceeding. We're not talking about the prescriptive or adjudicative comedy in the sense that it was discussed in the recent Picard opinion. It's just saying that, as then Judge Sotomayor noted in the Allstate decision, a US court should be hesitant in this context of chapter 15, she was considering his predecessor, hesitant about doing things that will unsettle a scheme of arrangement under another country's laws when that scheme's become final. Looking to the factors that this court considers when applying equitable mootness, they all warrant its application here, and there's barely any argument in the papers to the contrary. The presumption arises when a restructuring's been substantially consummated, or there's been a comprehensive change of circumstances, and there's no question here that this restructuring's become final. And it has been final for nearly a year and a half. When it became effective in September 2017, there were significant distributions of cash, new equity, existing debt was canceled, and so forth. And then this past December, Ocean Rig UDW was acquired by a third party. And once the presumption arises, it's clear under this court's precedent that the most important factor is whether- Shareholders, how many other shareholders have sought to attack this recognition order? Well, not a single shareholder or creditor attacked the recognition order. And that goes back to the standing point where the people with a stake in the restructuring were the creditors who got a partial recovery. And even the one I mentioned who had problems with the restructuring, they ended up going along with the recognition order and did not file any objections. There was not a single, the only objection was that of the appellant here. And I think that's an important point in just looking at the context here. On equitable mootness, once the presumption applies, the most important factor is whether the appellant sought a stay. The appellant here did not seek a stay of the recognition order, didn't seek a stay of the later order enforcing the schemes, never objected to that later order below. And there's been no explanation of why she did not do that. So that's itself dispositive, because all five of the factors under shadow gay must be shown once the presumption kicks in. And the stay is the most important factor, so you can just stop there. But looking at what the relief that's being sought here would do, and I think we heard that clarified, it's basically vacating this recognition order. And there are unchallenged findings below that the Cayman schemes are dependent on a recognition order, that there's a later enforcement order, and there are findings that that relief was necessary to prevent hostile creditor action. And without that order, there could be irreparable injuries. So there could be really significant consequences to the finality of the restructuring, and there could be effects on the third parties who relied on the restructuring if the relief were granted. So in conclusion, the district court did not abuse its discretion by considering all these factors and finding that fairness and finality require dismissal as equitably moot, and this court should confirm the district court's judgment. Thank you. Thank you. You reserved two minutes for a vote. I did. Now, with the focus of my opening ended up being a pellet standing on equitable mootness. Equitable mootness has not been applied in a chapter 15 case. Did you raise the securities fraud argument that you raised in front of us with Judge Kodal? Not expressly, no. I had raised that I am enjoined and I'd like to be unenjoined. And the basis for that, we didn't get into the securities aspect. So equitable mootness has not been applied in a chapter 15 case before. To apply it in the middle of this appeal would be changing the law in a way that is unfair to the point of being unconstitutional. In order for there to be an equitable mootness analysis in this circuit, there has to be a substantial consummation. Substantial consummation is a concept that applies in chapter 11 plans only. Just does not apply to schemes of arrangement. They work differently. The court here below applied a substantially completed standard. That's just not the law. The court misapplied all state, treated all state as a court of appeals case, which it is not. And then, that didn't do what Justice Sotomayor, then a judge in this district did. She had some skepticism, but she reached the merits. I think what should have happened here is merits briefing. We're before the district court on a Thursday. I believe my opening brief was due on a Monday. On the securities fraud claim, what is your pecuniary interest currently? My current pecuniary interest is that I'm a shareholder in Transocean and I'm still invested in the success of Ocean Rig. Thank you very much. Thank you. We'll reserve